Good morning. May it please the Court. My name is Eric Weaver. I'm appearing on behalf of Mr. McCormick. I think that the Sixth Amendment right to counsel, as well as the Feretta right not to have counsel, is a very robust right. And I think for that reason that this claim has to be looked at very seriously. You have many robust rights, though. Pardon me? Like many robust rights, it can be waived. That's true. And so I think in this case, there's obviously just two questions for this Court to decide. One, was it unreasonable for the District Court and the California Court of Appeal to find that on these facts, he did not rely on the representations of the Court? What representation by the Court? Okay, well, the first representation when he entered his Feretta waiver, it's true that on the form it said that he might reach a point where he no longer is allowed to withdraw his Feretta waiver. But that was negated at that time by the Court saying, you understand, at any time you feel the waters are over your head, you can ask for an attorney. Did the Court say, and I'll grant your request? He did not. But I think that a reasonable inference from that would be that he could. You can ask for anything. I mean, he's telling the defendant, or in this case, it was the defendant then, now the Petitioner, you can let me know if you change your mind, but I don't see anything there that says and I'll guarantee that I'll do whatever you ask me to do at that point, as opposed to you can let me know if you change your mind and we'll take a look at it then. Well, I think if the initial request, if the initial statement by the judge was taken in isolation, that certainly would be a reasonable conclusion for the California Court to have reached. However, two weeks later at the preliminary hearing, he has trouble cross-examining witnesses. Then a month later, when he's arraigned, the Court asks him again, do you want to continue representing yourself? He says that he does. He says, you understand, at any time if you change your mind, let me know. And does the Court say at that time, and I'll do what you ask me to do at that point? They didn't. But I think that a reasonable person in his position would understand what the Court is asking. Why would that inference necessarily apply? Here's a person who's been very successful representing himself. He had felonies against him. He represented himself, got him knocked down to misdemeanors. He feels very strongly that he's the one that can save his own soul. Why would we have all these inferences that you draw when it's not what is said? Well, I think that the inference – I think that what was happening is that Judge Curley was trying to talk him out of representing himself, frankly, and he kept telling him, look, if you change your mind, let me know, because he kept saying it was a bad idea. He said if I – he told him it should – Is that an open-ended point? Tom, think for a second. Sure. Would the judge be giving a blank check? Suppose you change your mind right before closing arguments and you decided, oh, I'm going to get somebody that's going to change this whole case for me. To infer that the judge has handed over a blank check, a promise that I'll grant any request if at any moment you change your mind, strikes me as a pretty implausible inference to draw. Why isn't that the case? Well, I think there's two more incidents where the suggestion that he can withdraw his FORETA waiver is raised. The third – on the third occasion, it was raised by the prosecutor who asked the judge to ask him if he would like to withdraw his waiver. The inference was that at least at that time, which is now March, two and a half months after the initial appearance, that it's still a live issue. And that time it wasn't the judge that raised it. It was the prosecutor who suggested that he should consider that. And I think that the final time is on May 10th, when they're having the readiness hearing, Mr. McCormick informed the Court that Judge Curley, who's no longer handling the case, his office had lined him up an attorney to act as a standby attorney. So I think that you've got these over and over again, the suggestion that he can waive his rights. And I think the fact that he's –   going to change the fact that he's a stand-alone attorney. I mean, at the very beginning, the court handed over a blank check. They wouldn't have to keep bringing the subject up, would they? Because the defendant would know that, gee, if I decide I want an attorney at any time, I'll take it. Well, I think that the question about whether he relied on it or not is the language he used, because he ended up, when he asked to be let out of his waiver, he used the exact language that the court used. That, I think, is pretty strong evidence that he was relying on the language that was used by the judge repeatedly. You continue to draw these inferences, factual inferences. My recollection is, of our law, is that we rely upon the highest state court for determining the facts, and we defer to them, right? That's correct. And the State said, the State court, in looking at the evidence, said the defendant did not make an unequivocal request and referred to the earlier statements. And they interpreted that he knew of an attorney whom he could consult for advice but would not be serving as trial counsel. Since then, he has not asked to be relieved of his FREDA waiver at all. That was their interpretation. Aren't we bound by what they thought? That is, it was not an unequivocal request to be relieved of his FREDA. He wanted a little time to go search and have an advisor. Right. Unless it's an unreasonable application of those facts to the law. The law is he's allowed to rely on representations by the court. But my question is, aren't we bound by that interpretation of what the request is rather than the inferences you're trying to get us to make? Well, I think it's an unreasonable interpretation of the facts. Another example that this, I think if you look finally, there's one more thing I wanted to draw to the Court's attention, and then I'll save my time, is the Court in justifying its decision, its part two decision, said that, in other words, that finding that the request was untimely, said he was vigorously defending himself. There is no way anyone could conclude from reading this that he was vigorously defending himself. He was haplessly hanging himself is the only way that it could be described. And that, I think that shows that there's, these are unreasonable determinations. I understand the Court's position. Well, the problem I'm having with your case is that we have, it seems to me the question is, is the determination that the court of appeal of the State of California made that he was not in a request to be relieved of his Feretta warning, whether that determination was in, was consistent with Supreme Court law? And I don't, I have difficulty with your case trying to figure out why we would be able to say that. I didn't hear the last part of your question. I'm having difficulty how we would say that, that is, that it's inconsistent with a proper application of Supreme Court law. Well, I think that the proper application of Supreme Court law is that they're allowed to rely on representations. I think that my, you know, my position is what it is, and I've, you know, stated what it is. And I'll reserve my two minutes that are remaining. I understand. We'll hear from the State. The Warden. Good morning, Your Honors, and may it please the Court. I'm Mark Johnson from the California Attorney General's Office, representing an appellee in this matter. From my view of this case, the district court properly denied this claim for, I count four separate reasons. And the first, the panel touched on it a little bit. These comments by the, I guess it was the arraignment court judge, while I would submit were not the wisest comments to make to try to talk this guy out of waiving his veretta rights, cannot reasonably be interpreted as a blank check for him to withdraw that waiver at any time, no matter how far along the proceedings things had gone. But even aside from that, and as the district court and the state court both properly noted, it was at least reasonable under these facts for the state court to find that he didn't rely on any of these comments from the judge. This defendant was adamant about withdrawing, invoking veretta at the outset and questioned about it subsequently. Up until and including the eve of trial, he was adamant, he remained adamant about representing himself. And in fact, if this argument is... Well, maybe he remained adamant because he thought he had a blank check. Let me address that, Your Honor. He changed his mind. So, you know, he said, well, no, no, I'm really going home, looking forward to this trial, all the while thinking, well, you know, the judge has pretty much told me if I get into trouble, he'll show me a lifesaver. Right. I understand that argument. And let me go back. Again, as the Court pointed out, this is an ADPA case, and the real question is whether the State's determination that he didn't rely on that was reasonable, whether it's been overcome by clear and convincing evidence. And the point I'd like to make is that, you know, if he had, in fact, relied to his detriment on that, and this, especially this defendant, who didn't seem reticent about involving himself in this case, if he had relied to his detriment on that, it would at least be reasonable for him to have said something at that point when he asked, hey, you know, maybe I could get a week and I could confer with counsel about this, and the Court said no, to say, wait, wait a minute, I was given this blank check before by, you know, if he had relied to his detriment on that, and this, especially this defendant, who didn't seem reticent about invoking motions or rights at any point during this trial, it would have been, you certainly would have expected him to voice some concern before raising this issue for the first time on State appeal. He wouldn't be the first lawyer, and there he's acting as his own lawyer, who wished he'd said something at trial that he didn't, right? I mean, no. Sure, and that's possible. I mean, let's sort of go with the idea that he's sitting there counting on being able to, you know, as the judge said, let me know any time you get in trouble, you know, and he's sort of counting on the help, and so then he calls on it, and the judge says no, too bad, there's no help, and he doesn't think to say, but wait a minute, I was counting on it. Okay. Well, I guess my response is, could that have happened? Is it possible? Sure. I bet you're going to go back and think of a better answer you could have given to some question we asked. Pardon me? I bet you're going to go home and think of a better answer to some question we asked. Happens to lawyers all the time. Sure. And it's possible that that could have happened in this case. And in response to your question, there's no doubt that that's what I'm going to do when I get home. Not a lawyer doesn't have that feeling. He would be alone if he didn't. Yeah. But under this ADPA case, again, and I, you know, I know I'm a one-note symphony here, but that's the standard we're up against, or the defendant's up against, and the question is, was California at least reasonable to find as a factual matter? He didn't rely on that. And the record discloses nothing to undermine that conclusion. And which brings me to the third point. I said there was four independent points why the district court got this case right. And the State did as well. And that's, you know, we know under Ferretta, to invoke or to discharge the Ferretta right, it has to be unequivocal, unequivocal assertion. And this assertion here was equivocal at best. I mean, this defendant was asked at the beginning of trial, do you still want to represent yourself? I've got this other standby counsel. Well, you understand, you're your own attorney here. Yeah, yeah. He's just a standby counsel. And then in his defense case, he says, well, wait a minute. Give me a week and so maybe I can talk to a lawyer that maybe will help me. That's far from an unequivocal retraction of his Ferretta demand. And so the State and the district court got it right on that point, too. And that brings me to my fourth and final point. Before you get to three, I don't understand why you have four. Isn't three dispositive? I think number one was dispositive, Your Honor. Well, but what we're dealing with here is whether or not he properly wanted to remove his Ferretta stipulation. And that took place towards the end. And the court of appeal held that it was not an unequivocal request. And the issue, I suppose, is whether that's contrary to or an unreasonable application of Supreme Court law. If we find in your favor there, why would we deal with these other issues? Isn't that what the guts of the case is? I think the case falls in for a variety of factors. That's one of them. This is a case that can be approached from a number of angles. He's not appealing that he waived it at first. He's not appealing any of those issues. What he's appealing is that when I got in over my head, I wanted some help. And the argument is he was requesting that his Ferretta waiver be withdrawn. And the court of appeal said that what they had before them was not an unequivocal request. And that's an, as I've argued, that's under these facts here, it was very reasonable for the State court to find that this was unequivocal because, well, I've already explained why. Given the comments at the outset of trial and the nature of his sort of wishy-washy request for a week just to talk to counsel is far from unequivocal. So what happened before is important in determining or putting the proper light on what was happening at the time he asked for that assistance or attempted to ask for that assistance. And I can understand that, but I think we have to get to that point. I think we have to make that decision when the California court of appeal said that it was not an unequivocal request. And I think that that was reasonable. And, and, and, and. Your brief says that, but that's why I'm having difficulty with four issues. I'm not sure there are four issues to decide. If Judge Wallace decides that number three is good enough, you're probably not going to disagree with him. No. I'm not going to. We'll take a win any way we can get one, Your Honor. Oh, I'm not saying you're winning it. I'm just saying that that's our one to decide. Well, that's why you're putting four issues. That's why I brought up four issues, Your Honor. If there's no further questions, I'll submit the matter. Thank you. Thank you. The only point I would make is I think that this, the California courts applied a strict ruling parsing his words very precisely when, if you read the context, he was befuddled. He didn't know what he was doing. He was overwhelmed by the situation. And I think that his request was not equivocal in the context of how he was representing himself. I think the other issues have been outlined well in the briefs by both sides and in the arguments, so I'll submit unless there are further questions. Thank you. Case is argued. Thank you. We'll stand for a minute.
judges: Kozinski, Wallace, Clifton